GIBSON, DUNN & CRUTCHER LLP
DOUGLAS FUCHS, SBN 196371
    DFuchs@gibsondunn.com
NICOLA HANNA, SBN 130694
    NHanna@gibsondunn.com
JAMES ROTSTEIN, SBN 305072
    JRotstein@gibsondunn.com
RAYCHEL TEASDALE, SBN 335034
    RTeasdale@gibsondunn.com
BRENNA GIBBS, SBN 342388
    BGibbs@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant*
*Andrew A. Wiederhorn*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW A. WIEDERHORN, WILLIAM J. AMON, REBECCA D. HERSHINGER, AND FAT BRANDS INC.,<br><br>Defendants. | CASE NO. 2:24-CR-00295-RGK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DISCOVERY**<br><br>**Trial**: October 28, 2025<br>**Hearing Date**: October 7, 2024<br>**Hearing Time**: 10:00 a.m.<br>**Dept**: Courtroom 850, 8th Floor<br>**Judge**: Honorable R. Gary Klausner |

**INTRODUCTION**

The government's opposition brief merely confirms why the Defendants felt obligated to bring this Motion to Compel ("Motion") in the first place. Had the defense not done so, it is anyone's guess when the government would have made production of key materials it was required to make–and promised to make–months ago. Yet even now, despite multiple promises to Defendants and this Court that it would make (and/or has made) full production, the government's production remains incomplete. The government's papers mischaracterize the facts and case law, and distract with irrelevancies, but the issue for the Court is simple: the government's continued failure to make timely and complete production of discovery in this case, and to abide by its promises, is prejudicing Defendants' abilities to prepare their defenses and threatening to delay the trial in this case.

It is true that after failing to produce millions of pages of discovery in its possession for almost five months, the government has finally started to produce *some* (but not all) of this material – but only *after* Defendants filed this Motion. What the government fails to address in its opposition is why it took six telephonic meet and confers, 17 meet and confer letters/emails, and Defendants' Motion to Compel for the government to simply respond to Defendants' requests and produce the discovery, even though it was in the government's possession the entire time.

While the government outlines three purported reasons why Defendants' Motion should be denied, each argument is meritless and belied by the record. **First**, the government asserts that Defendants' Motion is moot because the government was able to produce *some* materials before its opposition deadline. However, additional critical discovery in the government's possession responsive to almost every category outlined in Defendants' Motion is still outstanding. **Second**, the government alleges Defendants are improperly propounding "interrogatories" on the government, citing an inapplicable civil case as support. This is nonsense: the rules expressly allow for Defendants to request discovery, triggering the government's obligation to produce discovery. *See*

Fed. R. Crim. P. 16(a)(1) ("Upon a defendant's request, the government must disclose . . ."). **Third**, the government claims Defendants' Motion (made nearly four months after discovery was first due) is somehow "premature." But the government ignores this Court's Orders that (1) the government produce any discovery within two weeks of Defendants' arraignments (which the government did not do), and (2) Defendants "immediately" move to compel discovery the government declines to produce. Dkt. Nos. 13, 45-47; Criminal Order re Discovery.[1]

As the government concedes, this is a complex tax and securities fraud case involving over three million pages of discovery. And while trial was continued to October 28, 2025, Defendants agreed to that date only because of the government's representations that it would produce the outstanding discovery soon after the parties stipulated to the continuance. Accordingly, and for the reasons stated in Defendants' Motion, Defendants request that the Court order the government to immediately produce the requested discovery to avoid further delays and prejudice to the Defendants.

## ARGUMENT

### A. The Government Withheld Millions of Pages of Discovery Until Defendants Filed Their Motion to Compel and Critical Discovery Remains Outstanding.

Defendants' Motion is far from moot. While the government produced *some* outstanding discovery—only after Defendants filed this Motion—there is still a significant amount of outstanding discovery to which Defendants are entitled, and which

---

[1] The government asserts "the parties recognized" it would be "impossible" for the government to abide by this Court's two-week order. Dkt. 87 (the "Opposition") at 1-2. This is false; the Defendants never agreed to the government slow-walking discovery (as is evident by the many discovery letters and demands), and it was not "impossible" for the government to follow this Court's Order. Indeed, the government's investigation lasted four years and the government arbitrarily chose the date to indict (despite there being no time pressure to do so). There is no reason why the government could not have prepared a full set of discovery in advance of indicting the case and produced that discovery at the time of arraignment. The failure to produce discovery in a timely fashion is entirely the fault of the government.

the government promised to produce, months ago.

### 1. Interview Notes

While the government does not contest its obligation to produce Interview Notes, the government asserts all Interview Notes have been produced. That is incorrect. Four days after Defendants filed their Motion, the government finally produced notes for seven of the 19 Reports at issue, after ignoring Defendants' request for a month. Fuchs Decl. ¶ 6(d); Mot. at 15-18, Ex. 9. However, the government still has not produced the remaining 12 Interview Notes Defendants requested,[2] or otherwise confirmed when or if they will be produced. Fuchs Decl. ¶ 6(d). And notes must exist for at least six of these interviews, because the associated Reports specifically state they were drafted based on the agents' notes. Mot. at 17-18; Fuchs Decl. ¶ 6(d).

As Defendants described in their Motion, the missing Interview Notes contain statements of Defendants and are critical to resolve material discrepancies in the Reports. And Defendants have already identified discrepancies between several reports and the corresponding notes that have been produced. Mot. at 15-18. Defendants' request is narrowly tailored to notes related to specific interviews of Defendants and key witnesses. The government has failed to provide any rationale for why it has produced some Interview Notes but is withholding others. All missing Interview Notes should be produced.

### 2. Reports

Similarly, just four days after Defendants filed their Motion, the government produced three Reports from interviews with purported victims. Fuchs Decl. ¶ 6(a). Though these interviews took place July 16 and 18, 2024, it took the government nearly two months, numerous unanswered requests, and ultimately this Motion for the government to finally produce them. *Id*. Moreover, the government did not produce a

---

[2] Defendants identified an additional Report (in addition to the 19 Reports already identified) for which notes have not been produced. USAO_PROD_00000392 (302 of Ms. Hershinger stating the agent's report was based on agent notes).

Report for the recorded interview of Mr. Wiederhorn's son as it mistakenly claims in its opposition.[3] Despite producing FBI 302s for other recorded witness interviews, such as for Ms. Hershinger (USAO_PROD_00009986) and FAT's former CFO (USAO_PROD_00010068), the government has not produced a similar report for Mr. Wiederhorn's son's interview. *Id.* ¶ 6(f). The government also has not produced numerous exhibits shown to witnesses during their interviews that are referred to in the Reports. *See e.g.*, USAO_PROD_01370706 (mentioning an unproduced "Attachment A"); Fuchs Decl. ¶ 6(b). In its opposition, the government fails to address whether it is going to produce these materials or if additional Reports remain outstanding. All Reports and exhibits cited in the Reports should be produced.

### 3. Presentation Discovery

Since Defendants filed their Motion, the government has not produced any additional Presentation Discovery despite its mistaken claims to the contrary. Opp. at 6. And troublingly, the government ignores that during a June 14, 2024 meet and confer and in a July 23, 2024 email, it told Defendants it **would** produce outstanding Presentation Discovery to Defendants, yet inexplicably has not done so. Mot. at 9. The Court and the Defense are entitled to rely on the government's promises, particularly in the absence of a reasonable explanation for its changed position.

The government also seems to forget that there are multiple co-defendants in this case who did not attend presentations made by other co-defendants – e.g., neither Mr. Wiederhorn, Ms. Hershinger, nor Mr. Amon attended FAT's presentation. And none of the Defendants attended presentations made by uncharged witnesses. Thus, contrary to the government's assertion, most Defendants do not know the potentially exculpatory contents. Zaccaro Decl. ¶ 3; Opp. at 9. Moreover, the government fails to explain why the outstanding Presentation Discovery is any different from the Presentation Discovery

---

[3] The government cites to an FBI 302 reflecting a brief encounter with Mr. Wiederhorn's son on the same day as the interview for which the report is requested, but the FBI 302 reflects a separate, and far narrower, interview. Opp. at 6, Ex. C; Fuchs Decl. ¶ 6(b).

it already produced related to some Defendants and uncharged witnesses in this case—and it cannot do so. *See e.g.*, USAO_PROD_00020150 (notes from presentation provided by Ms. Hershinger's counsel); USAO_PROD_00018001 (notes from third-party proffer); USAO_PROD_00023729 (notes from meeting with Mr. Amon's counsel).

The requested Presentation Discovery, including but not limited to law enforcement reports and notes related to the presentations made by counsel for Mr. Amon and FAT, undoubtedly contains exculpatory *Brady* material, as the entire purpose of the presentation was to convince the government not to prosecute FAT and Mr. Amon. *See e.g.*, Zaccaro Decl. ¶ 3. And it necessarily supports the other Defendants' innocence as well given it undercuts the overall scheme alleged in the Indictment. *See id.*; USAO_PROD_01369334; Mot. at 9-10. Defendants are entitled to all the Presentation Discovery requested and seek an order compelling the same. *See* Mot. at 10 (citing cases); *see also United States v. Rodriguez*, 2003 WL 22290957, at *1 (E.D. Pa. Oct. 2, 2003) (ordering a new trial due to prosecution's failure to produce exculpatory information provided during proffer).

### 4. IRS Discovery

Once again, it took Defendants' Motion for the government to finally agree to simply search for the IRS's Form 433-A and November 30, 2017 letter that Defendants have specifically requested since July 12, 2024. Mot. at 10; Opp. at 10-11. The government also conveniently fails to address that as of the date of this Reply, the government still has not produced the complete IRS collection files for Mr. Wiederhorn or Fatburger Corp., nor has it produced the complete IRS ICS History sheets for Buffalo Café, nor any IRS collection files for Fatburger Restaurant of New Jersey. Fuchs Decl. ¶ 6(g). As discussed in Defendants' Motion, the missing IRS Discovery is material to the preparation of the defense given that Mr. Wiederhorn was charged with obstructing IRS collection activities and evading the payment of taxes by allegedly failing to

disclose certain information to the IRS—information that very well may be in the IRS's files. *See* Mot. at 10. All of the missing IRS Discovery should be produced.

### 5. Victim Discovery

Although the government agreed to produce Victim Discovery over two months ago, the government finally produced documents related to six individuals the government labels victims four days after Defendants filed their Motion. Fuchs Decl. ¶ 6(a). Notably the Victim Discovery produced is dated as early as May 11, 2024—just one day after Mr. Wiederhorn made his initial appearance, and as late as mid-July 2024—raising the question as to why this discovery was not produced months ago and why the Defendants had to repeatedly request it before getting anything. *Id*. Defendants request an order for the immediate production of all outstanding Victim Discovery or confirmation that no additional Victim Discovery exists.

### 6. Chain of Custody Discovery

Similarly, though the government said it would produce Chain of Custody Discovery nearly two months ago, and this discovery was in the government's possession at the time of the Indictment, the government did not produce this discovery until Defendants filed their Motion despite numerous requests from Defendants. Fuchs Decl. ¶ 6(c). And certain Chain of Custody Discovery remains outstanding. While the government produced Sentinel records reflecting critical chain of custody information in the FBI's database for a few items seized from Mr. Wiederhorn's residence, it did not produce these records for most of the over 100 items seized. *See e.g.*, USAO_PROD_00010612; USAO_PROD_00029045. The government does not contest these materials are discoverable and agreed to produce Chain of Custody Discovery in August. Mot. at 12. Defendants request that all outstanding Chain of Custody Discovery be produced immediately.

**B.  The Government Must Produce the SEC Discovery Requested.**

Defendants are entitled to discoverable information in the SEC's possession, regardless of whether the government sought or received it from the SEC. Mot. at 12-

15. In opposition, the government does not cite a single case within this Circuit. Rather, it relies on out-of-circuit district court cases that apply an entirely different and inapplicable standard than the Ninth Circuit standard.[4] *See* Opp. at 12-14.

Ninth Circuit law is clear—"[i]nformation is in the prosecutor's possession [and therefore must be disclosed if discoverable] if it is held by members of the prosecution team [] **or if it is held by other executive branch agencies and the prosecutor has knowledge of and access to the evidence**."[5] *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 844 (9th Cir. 2024) (emphasis added and internal citations omitted). "This is so regardless of whether the agency holding the information participated in the investigation." *United States v. W. R. Grace*, 401 F. Supp. 2d 1069, 1078 (D. Mont. 2005). Here, the facts plainly demonstrate the government had knowledge and access to discoverable information in the SEC's possession—a point that is not even seriously contested in the government's opposition.[6] Both agencies provided the other with formal access to their investigatory files, exchanged tens of thousands of pages of investigation materials, conducted more than 90% of the SEC's witness interviews jointly, coordinated the filing of the civil complaint and indictment, and operated the multi-year investigation in lock-step. *See* Mot. at 14. It strains credulity for the government to now claim that the SEC files are beyond its grasp.

**C.    Defendants' Motion to Compel is Not Premature.**

Instead of explaining why it has failed to meaningfully engage with Defendants on basic discovery for almost five months, the government contends that Defendants' Motion should be denied as premature, claiming it is entitled to hold onto millions of

---

[4] *United States v. Lacey*, 2020 WL 3488615, at *6, n.5 (D. Ariz. June 26, 2020) (recognizing that the Ninth Circuit's standard differs from other circuits).

[5] This is known as the "knowledge and access test" in the Ninth Circuit. *See United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1074-75 (D. Mont. 2005).

[6] Indeed, there are reports and notes from key witness interviews the SEC conducted on its own that contain *Brady* material. *See* Nixon Decl. ¶¶ 3, 6; Mot. at 15.

pages of discovery until an indeterminate time before trial.[7] Opp. at 10. Not only is that contrary to the law, fundamental fairness, and common practice,[8] but it also ignores this Court's Order, which plainly states that the government must "turn over any discovery within two weeks"—which the government did not do—and that Defendants should "immediately" bring a motion if the government declines to produce evidence. *See* Dkt. 13; Criminal Order re Discovery. There is no reason for the government to withhold discovery in its possession other than to improperly seek a tactical advantage against Defendants. Indeed, "[u]ndue delay [in producing discovery] does not serve the interests of fairness and justice, and at this stage of the case, where the government has substantially all of the relevant information, unnecessary discovery delay disproportionately prejudices the defense." *United States v. Escobar-Ayala*, 2018 WL 4462168, at *4 (N.D. Cal. Sept. 17, 2018) (rejecting government's request for more time to review voluminous discovery; finding government was moving "too slow"). Defendants are trying to move this case forward, exercise their constitutional rights to prepare their defenses, and prevent further delays or the need for another trial continuance, but the government's noncompliance and unwillingness to abide by its discovery obligations are impeding and prejudicial to the Defendants' rights and abilities to prepare their defenses in this case.

### D.   The Auditor Discovery Illustrates Why a Court Order is Necessary.

The government's undue discovery delays and general unresponsiveness is on full display in the events leading to the production of the Auditor Discovery—a factual

---

[7] The cases the government cites are inapposite. None of them involve a multi-defendant, complex tax and securities fraud case investigated for over four years prior to indictment, over three million pages of discovery, defendants who repeatedly requested discovery over a five-month period, and the government's failure to abide by its promises or engage with defendants about discovery—all of which are present here.

[8] Exculpatory information "must be disclosed to the defendant reasonably promptly after discovery." U.S. Attorneys' Justice Manual ("JM") at § 9-5.002; *see also* ABA Standards for Criminal Justice, Section 3-3.11(a) (3d ed. 1993) (stating exculpatory information should be disclosed "at the earliest feasible opportunity").

record that was not accurately presented to this Court in the government's opposition.

First, over a million pages of critical Auditor Discovery were produced only after the Defendants filed this Motion. But for the Motion, it is anyone's guess when the government would have produced this discovery. Second, in its opposition, the government conveniently starts the timeline related to the production of the Auditor Discovery on July 23, **one month after** the government failed to produce the Auditor Discovery in the timeframe it originally promised Defendants and this Court. *Compare* Opp. at 3, *with* Mot. at 3, 5, 7-8, Exs. 7, 12; Dkt. 31 at 3-4; Dkt. 62 at 4. In truth, it took eleven requests (from May through July) and three missed deadlines for the government to finally confirm that it intended to produce the Auditor Discovery by the week of August 19, 2024. Mot. at 8. But it again failed to provide the Auditor Discovery by that date. Finally, the government's assertion that it "provided updates" following this fourth missed deadline in August is misleading—the few updates provided failed to give a date certain and were only prompted by inquiries from defense counsel asking about the long delay in producing the Auditor Discovery.

It is thus clear that Defendants' Motion was necessary to compel the government to produce the Auditor Discovery Defendants were owed and promised months ago— much like the other discovery the government produced days after Defendants' Motion. And it further illustrates why a Court order is necessary for the remaining discovery.

**E.  The Government's Arguments Related to 404(b) Evidence and Privileged Documents Are Irrelevant to Defendants' Motion.**

    **1.  404(b) Evidence is Not a Subject of this Motion**

Nowhere in Defendants' Motion is there a specific request for disclosure of "Rule 404(b) evidence," which the government describes as Mr. Wiederhorn's conduct from over 25 years ago. Opp. at 11-12. Nevertheless, the government confusingly devotes over a page of its opposition to arguing why Defendants are not entitled to this discovery. *Id.* This is a red herring. Defendants did not move to compel production of this information in this Motion. Thus, there is nothing for the Court to rule on at this time.

Instead, the Defendants are trying to resolve with the government any outstanding discovery issues that are not the subject of this Motion (including this one). To the extent the government continues to refuse to engage and comply with its obligations, Defendants reserve the right to bring this to the Court's attention with the benefit of full briefing on these issues.

### 2. The Review of Privileged Documents Does Not Absolve the Government of Its Discovery Obligations

The government seems to argue that its repeated failures to fulfill its discovery obligations and timely produce other categories of discovery in this case should be forgiven because Mr. Wiederhorn's counsel was separately reviewing 92,000 documents as part of a privilege-review process agreed upon with the government. Opp. at 5-6, 10. First, Mr. Wiederhorn's counsel already completed its review of those documents. Fuchs Decl. ¶ 12. But more importantly, the government's obligation to produce the critical categories of discovery specified in Defendants' Motion—most of which the government represented it would produce—is not excused by the privilege review of completely different documents. In addition, the government fails to mention that its privilege review team was in possession of these approximately 92,000 privileged documents for 2.5 years before it provided them to Mr. Wiederhorn's counsel just one month before Defendants were indicted. *Id.* ¶ 10. And unlike the government here, Mr. Wiederhorn's counsel consistently updated the privilege review team on the status of counsel's privilege review. *Id.* ¶ 12. The Court should ignore the government's attempts at distraction given the privileged documents simply have nothing to do with the government's failure to produce critical outstanding categories of discovery outlined in Defendants' Motion.

### CONCLUSION

For the reasons set forth above and in their Motion, Defendants respectfully request the Court order the government to immediately produce all requested outstanding discovery.

| | | |
|---|---|---|
| 1 | DATED: September 30, 2024 | Respectfully submitted, |
| 2 | | GIBSON, DUNN & CRUTCHER LLP |
| 5 | | By: */s/ Douglas Fuchs* |
| | | Douglas Fuchs |
| 6 | | *Attorney for Defendant* |
| 7 | | *Andrew A. Wiederhorn* |
| 8 | | MCDERMOTT WILL & EMERY LLP |
| 9 | | By: */s/ Gordon A. Greenberg* |
| 10 | | Gordon A. Greenberg |
| 11 | | *Attorney for Defendant* |
| 12 | | *William J. Amon* |
| 14 | | IVERSEN PROCTOR LLP |
| 15 | | By: */s/ Michael J. Proctor* |
| 16 | | Michael J. Proctor |
| 17 | | *Attorney for Defendant* |
| 18 | | *Rebecca D. Hershinger* |
| 19 | | HUESTON HENNIGAN LLP |
| 21 | | By: */s/ Thomas Zaccaro* |
| | | Thomas Zaccaro |
| 22 | | *Attorney for Defendant* |
| 23 | | *FAT Brands, Inc.* |

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Andrew Wiederhorn, certifies that this brief does not exceed ten (10) pages, which complies with this Court's Standing Order.

DATED: September 30, 2024          By: */s/ Douglas Fuchs*
                                        Douglas Fuchs

                                        *Attorney for Defendant Andrew A. Wiederhorn*

**SIGNATURE ATTESTATION**

I, Douglas Fuchs, hereby attest that all other signatories listed, and on whose behalf this Reply is submitted, concur in the content of the Reply and have authorized its filing.

DATED: September 30, 2024        GIBSON, DUNN & CRUTCHER LLP

By: */s/ Douglas Fuchs*
    Douglas Fuchs